IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERIC WHITE,

          Plaintiff,

    v.

SUTTER DELTA MEDICAL CENTER, et al.,

          Defendants.

NO. C13-0187 TEH

ORDER GRANTING MOTIONS TO DISMISS

       This case came before the Court on March 11, 2013 on motions to dismiss by Defendant Sutter Health ("Sutter") and Defendant SEIU-United Healthcare Workers ("SEIU"). Defendant SEIU asks this Court to dismiss Plaintiff's claim for breach of the duty of fair representation ("DFR") as unexhausted. Defendant Sutter asks this Court to dismiss Plaintiff's claim for breach of the collective bargaining agreement ("CBA") as unexhausted and to stay the related state law claims. Having carefully considered the parties' papers and oral arguments, the Court now dismisses Plaintiff's federal claims and declines to exercise supplemental jurisdiction over the remaining state law claims.

**BACKGROUND**

       Plaintiff began working for Defendant Sutter in 2006. First Amended Complaint ("FAC") ¶ 10. Plaintiff was represented by the SEIU at all relevant times, which was a party to a CBA with Sutter. *Id.* ¶ 5. Plaintiff was terminated by Sutter in February, 2012. *Id.* ¶ 17. The Union filed a grievance on his behalf, and advanced the grievance through the first three steps outlined in the CBA. *Id.* ¶ 25. Sutter gave its Step 3 decision denying reinstatement in

May, 2012.[1] *Id.* ¶ 26. Per the CBA, the Union was required to give Sutter written notice of its intent to submit Plaintiff's grievance to arbitration within sixty calendar days of the Step 3 decision. *Id.* Instead, Plaintiff alleges that "around July or August," his Union representative "told Plaintiff that the employer was willing to pay something to settle the matter." *Id.* ¶ 28. Plaintiff stated that he wanted to speak with an attorney. *Id.*

Plaintiff then received a letter from the Union in September, stating that it had decided not to take the matter to arbitration. *Id.* ¶ 29. Plaintiff appealed the decision through the intra-Union appeals procedure. His appeal was heard by a panel of rank and file members on November 15, 2012. *Id.* ¶ 30. On December 3, the Union notified Plaintiff that the appeal had been successful and the panel had decided Plaintiff's termination should proceed to arbitration. *Id.* ¶ 31 & Dkt. 22-2.

Plaintiff filed this action in federal court on October 25, 2012, before the intra-Union appeal was heard. FAC ¶ 30. He alleged that Defendant Sutter terminated him without just cause and in violation of the CBA, *id.* ¶ 17; that the Union "discriminatorily and arbitrarily" refused to arbitrate Sutter's wrongful termination of Plaintiff, *id.* ¶ 32; that Sutter committed slander and slander per se when it "provided a negative reference for Plaintiff" to a prospective employer, including telling the prospective employer that Plaintiff had been "fired for poor job performance," *id.* ¶ 43; and that Sutter made misrepresentations in an attempt to prevent Plaintiff from obtaining employment in violation of California Labor Code §§ 1050, 1052, and 1054. Plaintiff's first two causes of action present federal questions under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Both Sutter and the SEIU bring motions to dismiss Plaintiff's claims. After the opening briefs in the motions were filed, the parties set a date for the arbitration of Plaintiff's claim: it will be heard on May 16, 2013. Sutter has agreed in writing not to raise the Union's delay as a defense to Plaintiff's claims. Harlan Decl. ¶ 5; Exs. A & B to Dkt. 30. Defendant SEIU seeks dismissal of the DFR claim, the only claim against it, on the ground that Plaintiff

---

[1] FAC ¶ 26 gives this date as "May 3, 2011." The Court assumes this is a typographical error, since all other dates are 2012 dates.

2

has not exhausted his contractually mandated remedies. It alternatively seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), as Plaintiff fails to state any facts beyond the conclusory allegation that the Union "arbitrarily" and "discriminatorily" failed to prosecute his grievance. *See* SEIU Mtn. at 10-13. Sutter seeks dismissal of the breach of the CBA claim as unexhausted. It requests that the Court stay the state law claims on the ground that they involve questions likely to be resolved in the arbitration, such as whether Sutter's statements about Plaintiff's termination were false.

**LEGAL STANDARD**

A dismissal for failure to exhaust nonjudicial remedies is treated as a non-enumerated motion under Federal Rule of Civil Procedure 12(b). *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988). It "is a matter in abatement, not going to the merits of the claim, and as such is not properly raised in a motion for summary judgment." *Id.* at 368 (citation omitted). Thus, in considering a dismissal for failure to exhaust, "the trial court may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56. No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* at 369 (internal quotation marks, brackets, ellipses and citations omitted).

**DISCUSSION**

**1. Federal Causes of Action for Breach of the Collective Bargaining Agreement and Breach of the Duty of Fair Representation**

A. Law Governing "Hybrid" LMRA Claims

Plaintiff brings a hybrid claim under the Labor Management Relations Act ("LMRA"). In such a claim,

> The suit against the employer rests on § 301 [of the LMRA, 29 U.S.C. § 185], since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty

3

of fair representation, which is implied under the scheme of the National Labor Relations Act.

*DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 164 (1983) (footnote omitted); *see also Simo v. Union of Needletrades, Indus. & Textile Employees, Sw. Dist. Council*, 316 F.3d 974, 981 (9th Cir. 2003), *amended and superseded on reh'g*, 322 F.3d 602 (9th Cir. 2003).

Ordinarily, "an employee is . . . bound by the outcome of grievance procedures outlined in the CBA according to the finality provisions in that agreement." *Grotz v. Kaiser Found. Hospitals,* C-12-3539 EMC, 2012 WL 5350254, at *5 (N.D. Cal. Oct. 29, 2012) (citing *DelCostello*, 462 U.S. at 164). Thus, "Normally, no judicial remedy lies – the grievance procedure under the CBA is the sole remedy. However, when a union has breached its duty of fair representation during the grievance process, courts have held that it would work an unacceptable injustice for an employee to be bound by its outcome." *Grotz*, 2012 WL 5350254 at *5 (internal quotation marks and citation omitted). The two claims are thus "inextricably interdependent":

> To prevail against either the company or the Union, employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

*DelCostello*, 462 U.S. at 164-65 (internal quotation marks, citations, brackets and ellipses omitted).

B. Exhaustion is required

"As a general rule, members of a collective bargaining unit must first exhaust contractual grievance procedures before bringing an action for breach of the collective bargaining agreement. This requirement applies with equal force to claims brought against a union for breach of the duty of fair representation." *Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990) (citation omitted). A union's breach of the duty of fair representation will excuse this contractual exhaustion requirement in only two situations: "First, where the union has sole power under the contract to invoke the higher stages of the grievance

4

1  procedure, *and* if ... the employee-plaintiff has been prevented from exhausting his
2  contractual remedies by the union's *wrongful* refusal to process the grievance[.]" *Carr*, 904
3  F.2d at 1319 (ellipses and emphasis in original).  "[S]econd, where grievants allege a breach
4  of the duty of fair representation with regard to negotiating the collective bargaining
5  agreement." *Id.* (citation omitted).[2]

6  Neither of these exceptions to the contractual exhaustion requirement applies here.
7  Under the first, Plaintiff has not been prevented from exhausting his contractual remedies; to
8  the contrary, he will exhaust those remedies by going to arbitration on May 16.  And under
9  the second, Plaintiff is not alleging any problem with the Union's negotiation of the CBA.
10  Thus, Plaintiff plainly must go through the CBA-mandated arbitration before he can sue.

11  C. Dismissal is required

12  The failure to exhaust "bars grievants from pursuing remedies in court." *Carr*, 904
13  F.2d at 1317 (affirming dismissal for failure to exhaust contractual grievance procedures)
14  (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965)).  Plaintiff argues that this
15  Court should stay the unexhausted claims, rather than dismissing them, because "an
16  arbitration award might provide for all of Plaintiff's back wages and emotional distress [but]
17  it might not." Opp'n at 6.  However, Plaintiff is required to first avail himself of those
18  procedures before declaring them to be inadequate; without doing so, any assertion that they
19  are inadequate is "speculative." *Carr*, 904 F.2d at 1319.

20  Plaintiff cites no case law supporting the argument that this Court should stay the
21  action.  Instead, he relies primarily on principles of equity.  He also argues that the six-month
22  statute of limitations applicable to hybrid § 301/ DFR claims will bar his action against the

---

[2] There are two separate exhaustion doctrines relevant in this context: the requirement to exhaust contractual remedies set forth in the CBA between the union and the employer, and the requirement to exhaust internal union appeals procedures for resolution of disputes between the union member and the union. *See Chapman v. United Auto Workers Local 1005*, 670 F.3d 677, 681-85 (6th Cir. 2012) (explaining these separate, but often-confused doctrines).  Properly at issue in this case, however, is only the failure to exhaust contractual remedies: Plaintiff *has* exhausted his internal union grievance remedies, by appealing the Union's initial decision not to take his grievance to arbitration.  Thus, Plaintiff's citation of case law addressing the exhaustion of internal grievance procedures is misplaced. *See* Opp'n at 5.  What Plaintiff has failed to exhaust are his contractually mandated remedies under the CBA.

5

Union based on pre-arbitration conduct if the Court dismisses this action. Plaintiff's arguments are unavailing.

First, Plaintiff is correct that a six-month statute of limitations applies to actions in court in this arena. *DelCostello,* 462 U.S. at 154-55, 169. In a DFR case, the statute of limitations "generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986) (citations omitted). However, the limitations period is effectively tolled if an employee seeks to address the alleged breach through a grievance procedure or arbitration. *Grotz*, 2012 WL 5350254 at *6. The rationale behind tolling is that "'[a]n employee should not be penalized for seeking to resolve his dispute through the grievance process before filing a suit in federal court.' A rule that did not allow for such tolling 'would encourage the premature filing of duty of fair representation suits in lieu of resort to non judicial grievance measures.'" *Id.* (quoting *Galindo*, 793 F.2d at 1509-10). Thus, a DFR claim based on the Union's inadequate representation would not accrue until the time of the arbitrator's decision, and a DFR claim based on earlier conduct would be "tolled while good faith attempts are made to resolve that claim through grievance procedures." *Galindo*, 793 F.2d at 1510 (footnote omitted). Plaintiff's argument that he will be prevented from bringing his claim if this action is dismissed is not persuasive.

Second, Plaintiff is concerned that Sutter will raise the delayed commencement of the arbitration as a defense to Plaintiff's claims. However, Sutter has agreed three times that it will not raise the delay as a defense, including giving such assurances in writing. Harlan Decl. (Dkt. 30) ¶¶ 3-5; Exs. A & B. The Court sees no reasonable possibility that Defendant Sutter would, after presenting its guarantees to this Court, attempt to raise the time-bar in arbitration. And if it did, Plaintiff's cause of action on that basis would accrue at that time. Therefore, Plaintiff's concern about the CBA-mandated timetable is unavailing.

Finally, the cases make clear that the proper remedy for failure to exhaust contractual remedies is dismissal without prejudice to allow Plaintiff to arbitrate the claim. *See Carr*, 904 F.2d at 1317 ("Failure to utilize the grievance procedures . . . bars grievants from

6

pursuing remedies in court " (citing *Republic Steel,* 379 U.S. at 652)); *Chapman*, 670 F.3d at 681 ("failure to exhaust contractual remedies [is] a bar to litigation"); *Ritza*, 837 F.2d at 371 (affirming dismissal for failure to exhaust); *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Boeing Co.*, C01-0623P, 2001 WL 803890, at *4 (W.D. Wash. July 6, 2001) ("In general, a plaintiff's failure to exhaust contractual remedies results in a dismissal of the Section 301 litigation" (citing *Utility Workers of America v. S. Cal. Edison*, 852 F.2d 1083, 1088 (9th Cir. 1988))). Plaintiff cites no authority supporting any other remedy for his unexcused failure to exhaust contractually mandated grievance procedures.

For these reasons, the Court DISMISSES without prejudice Plaintiff's first and second causes of action for breach of the CBA and breach of the DFR against Defendant Sutter and Defendant SEIU, respectively.

## 2. State Law Claims Against Defendant Sutter

As to the remaining claims for slander, slander per se, and violations of the California Labor Code, Defendant Sutter requests a stay and Plaintiff asks this Court to move forward with the claims. Neither party asserts that this Court has original jurisdiction over these state law claims. Thus, any jurisdiction in this Court would have to be supplemental under 28 U.S.C. § 1367.

Because no federal claims remain to be resolved in this case and in light of the early stage of these proceedings, this Court in its discretion declines to exercise supplemental jurisdiction over Plaintiff's remaining state tort and labor code claims. *See* 28 U.S.C. § 1367(c)(3) (allowing a district court to decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction"). The claims are dismissed without prejudice.

## CONCLUSION

For the reasons discussed above, the Court DISMISSES without prejudice Plaintiff's unexhausted claims for breach of the collective bargaining agreement and breach of the duty

7

of fair representation.  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and DISMISSES them without prejudice.

**IT IS SO ORDERED.**

Dated: 3/21/13

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT